* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. Following its review, the Full Commission finds no good grounds to receive further evidence and upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law, the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Defendant-employer was self-insured at the time of the July 21, 2005 injury and the Servicing Agent was the administrator of defendant-employer's claims.
3. On July 21, 2005, plaintiff was employed by defendant-employer as a mechanic. He was employed from May 28, 1979 to October 13, 2005.
4. On or about July 21, 2005, plaintiff was in the course of his employment working near a smog-hog machine when it exploded.
5. Plaintiff received a severance package as a result of the scheduled plant closing.
6. Defendants have paid some medical benefits on plaintiff's behalf as a result of his July 21, 2005 injury.
7. At the time of the alleged injury giving rise to this claim, plaintiff's average weekly wage was $907.42, yielding a weekly compensation rate of $604.98.
In addition, the parties stipulated to certain medical records, a surveillance CD, and all Industrial Commission forms filed in the matter.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the hearing before the Deputy Commissioner, plaintiff was a forty-nine year-old mechanic with a twenty-five year work history with defendant-employer. Plaintiff was working near a smog hog machine that exploded on July 21, 2005.
2. Plaintiff and another employee were sent for audiograms due to their close proximity to the explosion. Plaintiff's co-worker did not suffer significant injury. In the "Associate Incident/Accident Report" prepared by plaintiff, he described his injury as "hair burnt off hands ears ring." He furthermore reported in his description of the incident that he "turned to *Page 3 
run when fire was seen." An acquaintance of plaintiff, Philip Mulhall testified that he spoke with plaintiff ten minutes after the incident and plaintiff stated that he was fine other than some singed hair and ringing ears.
3. As a result of the July 21, 2005, incident, plaintiff is alleging numerous injuries including: hearing loss, vertigo, dizziness, unsteadiness, fatigue, motor coordination difficulties, sensory difficulties, speech impairment, head injury, headaches, memory lapses, an inability to focus, irregular sleep, lack of energy and balance difficulties.
4. On or about July 22, 2005, plaintiff presented to Dr. Pamela Jessup at U.S. HealthWorks. Plaintiff denied any loss of consciousness or head injury.
5. By July 27, 2005, plaintiff was complaining of headaches, anxiety and a nervous disorder. He was referred for a CT scan of the head, which was performed on or about August 1, 2005. Plaintiff also underwent an MRI of the brain on or about August 2, 2005. These studies were unremarkable. Lynda G. Johnson, a neuropsychologist, later reviewed plaintiff's complaints and noted that the stuttering and slurred speech issues that allegedly arose two days after the accident were unprecedented in a patient without a significant brain injury.
6. By August 5, 2005, Dr. Jessup opined that plaintiff might be suffering from possible posttraumatic stress disorder and anxiety. Dr. Jessup restricted plaintiff from climbing stairs or working at heights and plaintiff was referred for an ENT and neurological evaluation.
7. On or about August 18, 2005, plaintiff presented to Dr. John T. Henley, Jr., an otolaryngologist. Audiograms performed on July 22, 2005 and August 5, 2005 were reviewed which revealed hearing loss in both ears. At the hearing before the Deputy Commissioner, plaintiff testified that he had experienced hearing loss but admitted to not wearing any type of hearing assistance device. *Page 4 
8. Upon referral of Dr. Jessup, plaintiff presented to the physicians at Cape Fear Neurology, beginning on August 24, 2005. The neurological examination was unremarkable; however, plaintiff was complaining of daily headaches behind the left eye, stuttering, and memory problems. Based on plaintiff's subjective complaints, Dr. Fulop diagnosed posttraumatic headaches, concussion and hearing loss and plaintiff was referred for an EEG and vestibular therapy.
9. The subsequent EEG was noted to be within normal limits. Plaintiff remained under the care of physicians at Cape Fear Neurology and continued to work for defendant-employer.
10. Thomas J. Harbin, a neuropsychologist, performed a two-day neuropsychological evaluation on plaintiff on November 9 and 16, 2005. Dr. Harbin agreed that, with the exception of the hearing loss condition, the neurological examination performed by Dr. Fulop was unremarkable.
11. During Dr. Harbin's evaluation, plaintiff denied any impairment of vision, smell, taste or touch or problems with muscle weakness, clumsiness or falls; however, he did report problems with balance and with verbalization. Dr. Harbin noted that plaintiff's performance on memory tests was inconsistent. His delayed recognition was inconsistent and his liberal responses (indiscriminately identifying words as those he had been asked to remember) resulted in a "severely impaired recognition memory performance." It was noted that performance and measures of attention were also inconsistent during testing regarding language impairment, and plaintiff was noted to exhibit mild difficulty pronouncing difficult words and was unable to repeat a complex sentence. However, there was no evidence of word-finding problems, and no anomia or circumlocution. Plaintiff demonstrated no difficulty understanding and remembering *Page 5 
task instructions and there was no evidence of loose association, tangential responses or acalculia.
12. Dr. Harbin admitted that plaintiff's loss of his job due to the plant closing could cause plaintiff's depression and/or anxiety diagnosis. Dr. Harbin was unable to attribute any possible cognitive dysfunction to the accident. His conclusion that plaintiff was not malingering or exaggerating his complaints was based on plaintiff's supposedly valid SIRS test (in which plaintiff's scores were in the lowest range on four of the validity scales and the other four were indeterminate) and the MMPI in which only three scales were used rather than the traditional five scales to test validity and which was scored by hand.
13. Plaintiff remained under the care of physicians at Cape Fear Neurology and presented to Dr. Charya, a neurologist on January 18, 2006. Based on plaintiff's complaints, Dr. Charya recommended additional testing.
14. On April 28, 2006, plaintiff presented to Dr. Gualtieri, a neuropsychiatrist for an evaluation. Dr. Gualtieri's testing noted clear evidence of symptom exaggeration, particularly since plaintiff did worse in recognition testing than he did in the easier recall testing. He also noted that plaintiff's speech hesitancy and dysathria were unusual given the fact that plaintiff had not suffered a severe traumatic brain injury. Although other tests were admittedly valid with respect to exaggeration, Dr. Gualtieri stated that this phenomenon was not unusual and patients often show inconsistent results when they are misrepresenting their symptoms. Because plaintiff was in good health and showed no signs of cognitive impairment, Dr. Gualtieri was surprised that plaintiff would do so poorly on a vital signs test. Such results were indicative of symptom magnification according to Dr. Gualtieri's testimony. Based on plaintiff's appearance, *Page 6 
demeanor, and test results, Dr. Gualtieri specifically disagreed with Dr. Harbin's conclusion that plaintiff was depressed.
15. At hearing before the Deputy Commissioner, plaintiff testified that he performed poorly during Dr. Gualtieri's examination because he was suffering from a severe headache; however, Dr. Gualtieri specifically denied that plaintiff complained of headaches and testified that plaintiff was fully cooperative during the testing. Plaintiff also stated that he was late in commencing the testing; however, Dr. Gualtieri's records indicate that plaintiff began on time at approximately 9:00 a.m.
16. On August 7, 2006, Lynda G. Johnson, a neuropsychologist, reviewed Dr. Harbin's testing results and deposition, as well as those of Dr. Gualtieri. Consistent with Dr. Gualtieri's opinion, Dr. Johnson noted that plaintiff exhibited signs of insufficient effort and otherwise was magnifying his symptoms with respect to cognitive functioning. This was again based on plaintiff's ability to do better on the more difficult tests than he would do on the easier ones. Dr. Johnson stated that an individual scoring in plaintiff's range on the vital skills test administered by Dr. Gualtieri would essentially require twenty-four hour supervision and certainly be unable to work or drive. Dr. Johnson testified that plaintiff was limited in terms of his intellectual ability since an early age and that there was no evidence that such limitation was exacerbated by the work incident. Dr. Johnson also opined that plaintiff was not suffering from depression or post-traumatic stress disorder as a result of the incident.
17. Plaintiff worked for defendant-employer until October 13, 2005, performing his regular job duties, with the exception that he did not climb ladders. At this time, the plant permanently closed due to a corporate restructuring. Plaintiff continued to perform activities such as driving a truck, mowing his yard with a power mower, purchasing a truck, going metal-detecting, *Page 7 
and washing cars. Plaintiff also began taking classes five days a week. Drs. Gualtieri and Johnson noted that these activities would be inconsistent with plaintiff's profile and performance on the neuropsychological testing.
18. Based on the greater weight of the evidence, the undersigned find that plaintiff was not demonstrating full effort on psychological and psychiatric testing and physical examinations, which produced inconsistent and unreliable results.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings and fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 21, 2005, plaintiff sustained an injury by accident when a smog-hog machine exploded, which resulted in plaintiff's hearing loss. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury on October 21, 2004, plaintiff is entitled to have defendants provide all reasonable medical treatment related to his hearing loss incurred or to be incurred as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. Plaintiff has failed to prove that his complaints of vertigo, fatigue, motor coordination difficulties, a nervous disorder, sensory difficulties, headaches and memory lapses are related to his compensable injury by accident on July 21, 2005. N.C. Gen. Stat. § 97-2(6).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial *Page 8 
burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). Plaintiff has failed to prove by the greater weight of the evidence that the accident occurring on July 21, 2005 has rendered him disabled.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. As a result of his compensable injury on July 21, 2005, plaintiff is entitled to have defendants provide all reasonable medical treatment related to his hearing loss incurred or to be incurred as may be required to provide relief, effect a cure or lessen the period of disability.
2. Plaintiff's claim for other benefits is hereby DENIED.
3. Plaintiff is not entitled to temporary total benefits as a result of his July 21, 2005 work accident.
4. Plaintiff has reached maximum medical improvement and is not entitled to any permanent disability as a result of his July 21, 2005 work accident, other than related to his hearing loss. *Page 9 
5. Each side shall pay its own costs.
This the ___ day of January 2008.
S/______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ DIANNE C. SELLERS COMMISSIONER

 *Page 1